IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARCELLA BENSON, | ) | CASE NO. 1:10CV1654 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Marcella Benson ("Benson") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act), 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

For the reasons stated below, it is recommended that the Commissioner's decision be AFFIRMED.

**I. Procedural History**

Benson filed applications for DIB and SSI on November 1, 2006 (DIB) and November 20, 2006 (SSI) alleging a disability onset date of October 10, 2006. Tr. 75-76, 119-124. The state agency denied Benson's claims initially in June 2007 (Tr. 81-86) and upon reconsideration in September 2007. Tr. 88-93. On September 21, 2007, Benson requested a hearing (Tr.94), and on March 10, 2009, a hearing was held before Administrative Law Judge Julia D. Gibbs (the "ALJ"). Tr. 30-74. At Benson's request, the ALJ agreed to leave the record open for 14 days for

submission of further evidence regarding the medical opinion of Dr. Carrillo. Tr. 66-67, 74. Benson did not submit additional evidence.

In a decision dated April 29, 2009, the ALJ determined that Benson was not disabled. Tr. 29. Benson requested review of this decision by the Appeals Council on June 22, 2009. Tr.14. The Appeals Council provided Benson the opportunity to submit additional evidence (Tr. 6-6), but she did not submit any. The Appeals Council denied review on May 28, 2010, making the ALJ's decision the final decision of the Commissioner. Tr. 1-5.

## II. Evidence

### A. Personal and Vocational Evidence

Benson was born on April 2, 1963. Tr. 33. She was 45 years old at the time of the hearing. Tr. 33. Her past work experience includes work as a material handler, waitress, cook, press operator, plant nursery horticultural worker, and cashier. Tr. 67, 155-162. Benson resides in low income housing with her son and son's father. Tr. 46.

### B. Medical Evidence

Benson's alleged onset date is October 10, 2006 (Tr. 119-124), which is the date she underwent a hysterectomy at Ashtabula County Medical Center ("ACMC"). Tr. 242-243. Following the surgery, she experienced respiratory distress, and was transferred to the ICU where she was required to be intubated. Tr. 272, 510-554. After being treated for eight days at ACMC, she was transferred to the Cleveland Clinic. Tr. 219. The ultimate diagnosis by the Cleveland Clinic following Benson's surgery was aspiration pneumonia and acute respiratory distress syndrome ("ARDS"). Tr. 272. When Benson was transferred to a regular nursing floor, she was feeling well, with no shortness of breath or chest pain, but had been experiencing mild abdominal tenderness (with no pain) and was complaining of bilateral feet numbness and

tingling.  Tr. 272.  Benson was discharged on October 31, 2006 in good condition, with provision for home health care and instructions for physical therapy.  Tr.  272-273.  Ashtabula Regional Home Health Services provided Benson with treatment from November 2, 2006 – November 29, 2006.  Tr. 441.

### 1.  Treating Physician Medical Evidence

Edward Carrillo, M.D. ("Dr. Carrillo") treated Benson beginning in 1984.  Tr. 358.  Benson has had a history of asthma since her childhood.  Tr. 34, 358.  Over the years, Dr. Carrillo treated Benson for a variety of injuries and ailments.[1]

In January 2007, following Benson's post-surgical treatment by Ashtabula Regional Home Health Services, Dr. Carrillo referred Benson to physical therapy for right leg weakness and bottom of feet numbness.  Tr. 325.  An x-ray taken on January 16, 2007 of Benson's right hip and lower back ("the 2007 X-ray") showed no indication of arthritis or osteonecrosis in the hip.  Tr. 328.  As to the lumbar spine with obliques, the X-ray indicated "degenerative changes with minimal retrolisthesis of L5 probably on the basis of degenerative disease," and "no acute compression."  Tr. 328.  Benson was discharged from physical therapy on March 14, 2007.  Tr. 316.  At discharge, Benson reported that she was 50% better but was still experiencing tingling in the bottom of her feet, periodic hip pain and was waking at night.  Tr. 316.  The assessment at the time of discharge was that she had reached maximum benefit from physical therapy with instructions to continue at home.  Tr. 316.

On April 2, 2007, Dr. Carrillo completed a SSA questionnaire regarding Benson.  Tr. 329-331.  The questionnaire indicated that Benson had applied for disability based on allegations of lung disease and lung disorder.  Tr. 329.  Dr. Carrillo reported that he had first seen Benson on

---

[1] Including ankle sprains (Tr. 369-372), COPD/ARDS (Tr. 330, 362-367), anxiety (Tr. 365-368), back pain (Tr. 330, 360-369, 556-557), seizure disorder (Tr. 373), and hypoglycemia (Tr. 369).

October 23, 1984 and last seen her on March 20, 2007. Tr. 330. He listed two diagnoses: chronic obstructive pulmonary disease ("COPD") and low back pain. Tr. 330. He described the nature and symptoms of her COPD as shortness of breath and indicated that the onset date of the COPD was October of 2006. Tr. 330. He reported that she had developed ARDS after surgery and that, following discharge, her symptoms had become more difficult to control requiring multiple medications. Tr. 330. Dr. Carrillo also reported that the three different inhalers that Benson had been prescribed were effective. Tr. 331.[2] In response to a question regarding limitations on ability to perform sustained work activity, Dr. Carrillo opined that Benson was "unable to work." Tr. 331.

In June 2008, Dr. Carrillo wrote a letter indicating that Benson had a history of asthma since childhood and that she had sustained complications including acute respiratory distress syndrome after surgery in 2006. Tr. 358. He indicated that he was then treating her for COPD requiring multiple medications. Tr. 358. He opined at that time that Benson had become disabled and was unable to participate in gainful employment. Tr. 358.

On March 5, 2009, Dr. Carrillo completed a Medical Statement regarding "COPD (Chronic Obstructive Pulmonary Disease) Where Smoking is an Issue" for the period of October 10, 2006 through the date of the report. Tr. 559. Dr. Carrillo indicated that the diagnostic criteria, associated conditions, and indicia of impairment were: dyspnea on exertion, wheezing and asthma. Tr. 559. He noted that Benson had a significant smoking history but was no longer smoking. Tr. 559. Dr. Carrillo further indicated that he did not proscribe supplemental oxygen. Tr. 559. He opined that Benson had the following limitations: (1) one hour of work per day, (2) 30 minutes of standing in an 8 hour work day, (3) 60 minutes of sitting in an 8 hour work day,

---

[2] Dr. Carrillo's treatment records also indicate that that Benson's breathing problems were under control with medication and she was doing ok. Tr. 360 (6/6/08 treatment note), 364 (2/20/07 treatment note).

4

(4) no walking in an 8 hour work day, (5) occasional lifting of 10 pounds, (6) frequent lifting of 5 pounds, and (7) no toleration of dust, smoke and fumes. Tr. 559.

On March 5, 2009, Dr. Carrillo also completed a pain questionnaire. Tr. 560. The pain questionnaire relates to the time period of October 10, 2006 through March 5, 2009. Tr. 560. Dr. Carrillo opined that Benson's back pain caused chronic pain syndrome and her COPD could cause occasional chest pain. Tr. 560. He indicated that there was localized tenderness in the low back area. Tr. 560. Dr. Carrillo opined that the chronic pain syndrome affects Benson's ability to do work activities. Tr. 560.

### 2. Consultative Examiner Medical Evidence

In May 2007, Adi A. Gerblich, M.D., FCCP ("Dr. Gerblich"), conducted a consultative examination of Benson and interpreted the pulmonary functions study. Tr. 332-348. His report indicated that Benson was 62 inches in height and weighed 188 pounds. Tr. 337. He stated that Benson's general appearance was one of an "obese lady." Tr. 337. Dr. Gerblich indicated that the pulmonary functions study showed moderate restrictive and obstructive ventilator defect as well as a suggestion of underlying sleep apnea, but he stated that the study did not show post-bronchodilation restriction. Tr. 335. Manual muscle testing revealed no abnormalities. Tr. 339-342. Dr. Gerblich's physical examination did not note any significant restrictions. Tr. 337. Dr. Gerblich opined that Benson's tobacco use hindered further respiratory improvement.[3] Tr. 337.

### 3. State Agency Reviewing Physician Medical Evidence

In June 2007, Kathryn Drew, M.D. ("Dr. Drew") completed a Physical Residual Functional Capacity Assessment ("RFC Assessment").[4] Tr. 349-356. Except for some exertional

---

[3] Benson testified that she was no longer smoking by 2007. Tr. 36.

[4] Drew's Physical Residual Functional Capacity Assessment was reviewed and affirmed by Walter Holbrook, M.D. ("Holbrook") on September 4, 2007. Tr. 357.

5

limitations[5] and one environmental limitation[6], Dr. Drew's RFC Assessment did not include any other limitations. Dr. Drew indicated that Benson's reported severity of her symptoms is not consistent with the total medical and nonmedical evidence. Tr. 354.

### C. Testimonial Evidence

#### 1. Benson's Testimony

On March 10, 2009, Benson appeared with counsel and testified at the administrative hearing. Tr.32. She testified that she was unable to work because she has difficulty breathing, difficulty standing for long periods of time, numbness in her feet, and she has to use inhalers (sometimes an emergency inhaler). Tr. 33-34. She indicated that it takes about 20 minutes for her inhaler to start working. Tr. 34.

She also testified that, although she has had asthma since she was a child, she was able to function using breathing techniques and using an emergency inhaler, as necessary, before her surgery in 2006. Tr. 34-35. Following her surgery, her breathing problems became more serious. Tr. 35. Benson reported having had a collapsed lung following the 2006 surgery. Tr. 38. When asked if there were any further diagnoses following the surgery, Benson stated that she saw her doctor (Dr. Carrillo) once a month. Tr. 35-36. Since her surgery in 2006, Benson testified that she tries to avoid going to hospitals, and she has not gone to the emergency room or a hospital for her asthma or breathing disorder. Tr. 36-38, 45.

---

[5] Exertional limitations noted were: (1) occasionally lifting/carrying 50 pounds; (2) frequently lifting/carrying 25 pounds; (3) standing/walking for about 6 hours in a 8 hour work day; (4) sitting (with normal breaks) for a total of 6 hours in an 8 hour work day; (5) pushing/pulling unlimited except to the extent limited by lifting/carrying restrictions. Tr. 350.

[6] The environmental limitation noted was avoidance of concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. Tr. 353.

Benson testified that she began to experience numbness in both of her feet following her release from the Cleveland Clinic in 2006.  Tr. 38.  She saw her family doctor who referred her for physical therapy.  Tr. 38.  She testified that she still had tingling in her right foot and that her right leg always throws itself outward.  Tr. 38.

When asked about her current level of function, Benson reported that she lives with her minor son, and his father (who is disabled), in an apartment that does not require her to walk up and down stairs.  Tr. 46.  Benson testified that she manages caring for herself (e.g., showering, with the assistance of rails, grooming, cooking, and light housework) but such activities take her quite awhile to complete, because she has to stop and rest periodically.  Tr. 46-47.  She testified that she has to take breaks because of her back, leg and/or breathing problems.  Tr. 48, 64.  She also stated that she sometimes has to use her emergency inhaler while completing household chores.  Tr. 49.

Benson indicated that the period of time during which can sit is less than an hour.  Tr. 49.  She testified that she might have to stop to get out and stretch when driving in car.  Tr. 49.  Benson noted that because she cannot put a lot of pressure on the brake pedal, her doctor would prefer that she not drive in the winter.  Tr. 50-51.  However, Benson testified that she does in fact drive.  Tr. 50-51.  Benson testified that she prefers a side-lying position to any other position.  Tr. 51.  Laying flat on her back results in her lower back cramping up along with her right leg.  Tr. 52.  Regarding her back, legs and feet, Benson testified that her doctors told her something was pinched off, but she could not provide any additional details beyond that.  Tr. 52.

Benson testified that she gets really tired some days, which she attributes to her breathing problems.  Tr. 53.  Benson testified that she needs a nap after about an hour or two of housework.  Tr. 53.  She further testified that daily naps were becoming a habit.  Tr. 54.

Beginning in approximately April 2009 (one month prior to the hearing), she began requiring daily naps a couple times a day. Tr. 54. Prior to that, and following her release from the Cleveland Clinic in 2006, she had been taking one hour naps each day. Tr. 54.

Benson testified that Dr. Carrillo said that she will need oxygen someday, but he has not yet prescribed it. Tr. 54-55. She confirmed that a pulmonary function study was performed. Tr. 55. Benson testified that while she used to be able to lift up to 50 pounds when she was working, she could now lift two gallons of milk. Tr. 56.

Benson testified that, following physical therapy in 2007 for her back and numbness in her legs she has not received further treatment. Tr. 56-57. She testified though that she continues to do the exercises that she was given. Tr. 57. She stated that she has a tendency to lose her balance and fall, especially when handling stairs. Tr. 57-58. On two occasions, she has sought medical treatment for falls. Tr. 58-59. Benson testified that she does not use a cane or other device to assist her with walking, and it her doctor's preference that she walk without the aid of a device. Tr. 59.

Benson takes tramadol four times a day. Tr. 63. According to Benson, the tramadol does not take away the pain, but it numbs the pain. Tr. 63.

### 2. Vocational Expert's Testimony

On March 10, 2009, Vocational Expert Lori Kallon ("Kallon" or "VE") appeared and testified at the administrative hearing. Tr. 67-73. She provided testimony regarding Benson's prior work. Specifically, Kallon testified that as a waitress Benson performed light exertional level, semi-skilled labor; as a press operator she performed light exertional level, unskilled labor; as a meat cutter she performed heavy exertional level, skilled labor; as a cook she performed medium exertional level, skilled labor; and as a plant nursery horticulture worker, she performed

8

heavy exertional level, semi-skilled labor. Tr. 67. Kallon testified that Benson would have transferable food service skills to light occupations. Tr. 67. The VE was asked a serious of hypotheticals by both the ALJ and claimant's attorney. Tr. 68-73.

### III. Standard of Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant

> work, he is not disabled.
>
> 5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform work available in the national economy. *Id.*

### IV. The ALJ's Decision

In her April 29, 2009 decision, the ALJ found that Benson met the insured status requirement through December 11, 2011. Tr. 20. The ALJ also found that Benson was not engaged in substantial gainful activity since October 10, 2006, her alleged onset date. Tr. 20. The ALJ determined that Benson does have severe impairments, specifically, asthma and chronic obstructive pulmonary disease. Tr. 20. She also found that Benson does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.[7] Tr. 23. The ALJ determined that Benson has the residual functional capacity ("RFC") to perform light work, except she would have to avoid exposure to toxic chemicals and fumes. Tr. 24. Further, the ALJ found that Benson is capable of performing her past relevant work as a press operator or waitress, and for that reason, she is not disabled. Tr. 28.

---

[7] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P , App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525.

### V. Parties' Arguments

Benson raises three issues for review by this Court. First, she argues that the ALJ erred by failing to properly evaluate her chronic pain. Second, she argues that the ALJ erred by failing to consider her obesity at all steps of the sequential evaluation. Finally, she argues that the ALJ erred by failing to follow the treating physician rule in evaluating the opinion of her treating physician, Dr. Edward Carrillo.

Defendant asserts that the ALJ conducted a full and complete review of the record including Plaintiff's allegations of pain, and the ALJ explained how the evidence supported her decision. Defendant also argues that the ALJ was not required to consider Plaintiff's obesity because Plaintiff was not diagnosed with obesity nor was there evidence in the record that Benson's weight significantly impacted her functioning. Finally, Defendant argues that the ALJ adhered to the treating physician rule.

### VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992).

The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence, or indeed, a preponderance of the evidence

11

supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Benson v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

A.  **The ALJ properly evaluated Plaintiff's allegation of chronic low back pain/chronic pain syndrome.**

Benson argues that the ALJ erred in not finding her chronic low back pain/chronic pain syndrome to be a "severe" impairment. Pl's Brief 4. Benson also argues that the ALJ failed to properly assess the credibility of Benson's statements regarding pain and consider the impact of Benson's pain in the RFC that the ALJ found. Pl's Brief 6-7. Benson argues that the ALJ improperly applied the standard for evaluating the symptom of pain.[8] Pl's Brief 5.

Citing the 2007 x-ray that showed minimal degenerative changes,[9] Benson argues that the ALJ should have found that there was a medically determinable lumbar spine impairment (or other musculoskeletal impairment) capable of producing her chronic low back pain (chronic pain syndrome). Pl's Brief 6. During the hearing, the ALJ advised that there were no clinical findings to explain the back pain other than the one x-ray. Tr. 66. In response, Benson requested and was provided additional time following the hearing to submit additional evidence. Tr. 66. However, Benson did not submit any.

---

[8] *Soc. Sec. Ruling* 96-7p and 20 *C.F.R.* §§ 404.1529 and 416.929.

[9] Tr. 22; Pl's Brief 6. The x-ray referred to is dated January 16, 2007 and contained impressions for the right hip and lumbar spine with obliques. Regarding the lumbar spine with obliques, the impression was "[d]egenerative changes with *minimal* retrolisthesis of L5 probably on the basis of degenerative disease. No acute compression." Tr. 328 (emphasis added). Regarding the right hip, the impression was "[n]o evidence for arthritis or osteonecrosis."

Benson's argument regarding pain requires a review of of the standards for determining whether an impairment is severe and for evaluating symptoms, such as pain.

"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a), 416.921(a). If a claimant does not have any impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities, a claimant will be determined not to have a severe impairment. 20 C.F.R. § 404.1520(c), 416.920(c).[10]

The regulations describe a two-step process for evaluation of symptoms[11] such as pain. 20 C.F.R. §§ 404.1529, 416.929; 1996 LEXIS at *5.

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. First, the ALJ will ask whether the [sic] there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, *if* the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.[12]

Plaintiff's argument overlooks the fact that the ALJ detailed the evidence that she relied upon to reach her conclusion that there was no medically determinable lumbar spine impairment

---

[10] Basic work activities include physical as well as mental functions. 20 C.F.R. § 404.1521(b), 416.921(b). Walking, standing, sitting, lifting, pushing, pulling, reaching or handling are physical functions deemed to be "basic work activities." *Id.*

[11] A "symptom" is "an individual's own description of his or her physical or mental impairment(s)." Soc. Sec. Ruling No. 96-7p, 1996 LEXIS 4, *5 (Soc. Sec. Admin. July 2, 1996).

[12] Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions. 20 C.F.R. §§ 404.1529, 416.929; 1996 LEXIS at *5.

(or other musculoskeletal impairment) capable of producing the chronic low back pain (chronic pain syndrome).  Tr. 22-23.  For example, the ALJ noted that, although Dr. Carrillo referenced chronic low back pain, he did not order additional x-rays[13] or other studies such as MRIs or CT scans.  Tr. 22.  Although Benson testified that something had been pinched in her back (Tr. 34), there was no medical evidence to corroborate this statement.  Tr. 23.  Also, the ALJ noted that Benson's treating physician's notes did not include physical examination findings, and a right hip x-ray was negative for arthritis or other abnormality.  Tr. 22-23.  Benson testified that, at her doctor's direction, she does not use a walker, crutches, cane or other device to assist her in walking.  Tr. 59.

In this case, there is substantial evidence to support the ALJ's decision.  Accordingly, it may not be overturned even if the 2007 X-ray cited by Benson constitutes substantial evidence supporting her position.  *Benson v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Because the ALJ determined that there was no medically determinable lumbar spine impairment (or other musculoskeletal impairment) capable of producing the chronic low back pain (chronic pain syndrome) assessed by Dr. Carrillo, it was not necessary for the ALJ to move to the second step of the two-step process for evaluating symptoms to assess the credibility of Benson's statements.  *See Rogers*, 486 F.3d at 247 (finding that, when analyzing symptoms of pain, the second step, which involves evaluation of the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities, occurs only if the ALJ finds that an underlying medically determinable physical impairment exists).

However, even though the ALJ was not required to do a credibility assessment regarding Benson's allegations of back pain, the ALJ did review Benson's statements and activities in

---

[13] As noted, an x-ray was taken on January 16, 2007.  Dr. Carrillo was the referring physician.  Tr. 328.

determining the extent to which such statements should factor into the ALJ's determination. The ALJ determined that "despite her [Benson] subjective complaints of chronic low back pain, corroborated in writing by her two children, the evidence failed to include objective findings demonstrating an impairment capable of causing such pain" and the claimant's daily activities seemed inconsistent with the extent of the disability alleged.[14] Tr. 28. Also, the limitations on her daily activities that Benson testified to conflicted with the reports about her ability to perform daily tasks following her discharge from home health care in November 2006. Tr. 26.

Further, contrary to Benson's assertion, the ALJ did consider Benson's subjective complaints of pain in determining her RFC. The ALJ specifically stated that, although she did not find a severe lumbar spine (or other musculoskeletal) impairment, she did take into account Benson's history of numbness and tingling in the lower extremities in establishing the RFC. Tr. 23. The ALJ also considered the pain questionnaires, Benson's ability to perform daily activities, the medication she used for pain as well as Benson's testimony regarding difficulties in lying down on her back and her inability to do anything for a long period of time due to pain. Tr. 25-28.

For the reasons set forth above, the ALJ did not err in her consideration and evaluation of Benson's allegation of chronic low back pain/chronic pain syndrome when determining that Benson's pain was not a severe impairment or in the RFC assessment.

**B.     The ALJ did not err in not addressing obesity directly at all sequential steps.**

Plaintiff claims that the Commissioner erred by not considering her obesity at all steps of the sequential evaluation. In support of her argument, Benson relies on the fact that there is a notation of Benson's height and weight in her treating physician's medical notes, and that the

---

[14] Benson testified that she can bathe and dress herself, cook, wash dishes, dust, mop, sweep and drive but at a slow pace. Tr. 26, 46-51.

15

consultative examiner noted Benson's height and weight and stated that Benson appeared to be an obese lady.[15]  However, Benson did not present any evidence to the ALJ as to how her weight impacted her ability to work.

As noted by Benson, Social Security Ruling No. 02-1p does address evaluation of obesity and it also indicates that obesity may be a factor in an RFC determination. However, Benson failed to present the ALJ with evidence that her weight had an impact on her other impairments. As required by the Regulations, the claimant must bring to the Commissioner's attention everything that shows that he or she is disabled. 20 C.F.R. § 404.1512.  In other words, a claimant must provide medical and other evidence that can be used by the Commissioner to reach conclusions about medical impairments and their effect on the claimant's ability to work. 20 C.F.R. §§ 404.1512; 416.912.  Only those impairments that the claimant says that he or she has or about which the Commissioner receives evidence will be considered.  *Id.*

Where, with respect to an obesity claim, a claimant fails, as required by 20 C.F.R. 404.1512(a), to furnish medical and other evidence that the SSA can use to reach conclusions about the claimant's medical impairment and its effect on the claimant's ability to work on a sustained basis, an ALJ has no obligation to address the claim.  *See Cranfield v. Comm'r of Soc Sec.*, 79 Fed. Appx. 852, *857-858 (6th Cir. 2003).   Inasmuch as Benson did not present the Commissioner with evidence of the effect of her weight on her ability to work, the ALJ did not err in failing to address obesity as an alleged impairment when completing the sequential evaluation.  See *Cranfield*, 79 Fed. Appx. at * 857-858.

---

[15] Pl's Brief 8.

**C.     The ALJ properly followed the treating physician rule.**

Benson relies on the March 2009 opinions of her treating physician, Dr. Carrillo, to support her disability claim.[16]  Benson argues that the ALJ failed to follow the "treating physician rule" when considering Dr. Carrillo's opinions.

Under the treating physician rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).[17]  However, where an opinion relates to a determination which is specifically reserved to the Commissioner such as an opinion as to whether an individual is disabled or unable to work, then those opinions, even when offered by a treating source, can never be entitled to controlling weight or given special significance. Soc. Sec. Rule No. 96-5p, 1996 SSR 2, at *14-15 (Soc. Sec. Admin. July 2, 1996).   Thus, the ALJ correctly noted that speculation in Benson's treating physician's opinions regarding employability do not carry probative weight.  Tr. 26.  *See* Soc. Sec. Rule No. 96-5p.

---

[16] On March 5, 2009, Dr. Carrillo filled out two forms: a Medical Statement Regarding COPD, and a Pain Questionnaire.  Tr. 559-560.  In the 2009 COPD Statement, he opined that Benson can only work for one hour per day, stand for 30 minutes per day in an 8 hour work day, sit for 60 minutes in an 8 hour work day, cannot walk in an 8 hour work day, and can only lift 10 pounds on an occasional basis and only lift 5 pounds on a frequent basis. Tr. 559.

[17] The Commissioner's regulations impose a clear duty always to give good reasons in its notices of determinations or decisions for the weight given to treating source opinions.  *Cole*, No. 09-4309, 2011 U.S. App. LEXIS 19392 *11; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Cole*, No. 09-4309, 2011 U.S. App. LEXIS 19392 *11 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SR LEXIS 9, at *12 (Soc. Sec. Admin. July 2, 1996)) (internal quotations omitted).

Where a treating source's opinion is not provided controlling weight, certain factors must be applied by the ALJ to determine what weight should be given to the treating source's opinion. *Bowen v. Comm'r of Soc Sec.*, 478 F.3d 742, 747 (6th Cir. 2007). The factors to be considered are: (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the source, and (6) any other factors which tend to support or contradict the opinion. *Bowen*, 478 F.3d at 747; 20 C.F.R. §§ 404.1527(d), 416.927(d).

Clear articulation of how the treating physician rule is applied allows a claimant to understand the rationale for the Commissioner's decision and it allows for meaningful review of the ALJ's application of the treating physician rule. *See Rogers*, 486 F.3d at 242-243.

In this case, after a full review of the evidence, the ALJ determined that Dr. Carrillo's opinions regarding Benson's limitations were entitled to limited weight, i.e., Benson's treating physician's opinion was not entitled to controlling weight. The ALJ explained how she reached this determination. She found Dr. Carrillo's opinions to be unsupported by acceptable medical findings and inconsistent with other substantial evidence of record, including Dr. Carrillo's own treatment notes. Tr. 26.

A review of the record and the ALJ's decision reveals that the reasons provided by the ALJ for discounting Dr. Carrillo's opinions are supported by substantial evidence. Dr. Carrillo's treatment records indicate that Benson's breathing problems were under control with medication and she was doing ok. Tr. 360, 364. These records are inconsistent with Dr. Carrillo's March 5, 2009 Medical Statement Regarding COPD. Tr. 559. The 2009 COPD statement is also

internally inconsistent because it states that no supplemental oxygen had been prescribed. Tr. 559.

Further, Dr. Carrillo's June 24, 2008 opinion that Benson's pulmonary condition had resulted in her becoming disabled (Tr. 358) was contradicted by his own treatment notes made only three weeks earlier indicating that her breathing condition was being controlled by medication. Tr. 360. Additionally, Dr. Carrillo's report dated April 2, 2007 indicated that the breathing medications were effective.[18] Tr. 331.

The ALJ also found that Dr. Carrillo's opinions were unsupported by the other medical evidence of record. For example, the results of the 2007 pulmonary study tests did not provide support for Dr. Carrillo's strict limitations.[19] Tr. 26, 335. Dr. Gerblich's report regarding the pulmonary study found that the pulmonary tests found no post-bronchodilation restriction. Tr. 26, 337. Tr. 337. Notwithstanding the fact that Dr. Carrillo, in his 2009 COPD statement, recommends very strict restrictions (e.g., only being able to work for one hour per day), as noted by the ALJ, there was no evidence that Benson had undergone any further objective breathing studies. Tr. 26.

As further support for her finding that the treating physician's opinion was inconsistent with other substantial evidence in the record, the ALJ pointed to the fact that Benson had not required emergency room or hospital visits for her breathing problems since her discharge in October 2006. Tr. 26.

---

[18] Although, the April 2, 2007 and the June 24, 2008 report pre-date the later dated 2009 COPD statement, as of March 5, 2009, the date of the 2009 COPD statement, no supplemental oxygen had been prescribed. Tr. 559.

[19] Plaintiff alleges that the FVC test that was performed was not the correct test for COPD. Pl's Brief 10. However, it appears that both a FVC test and a 1 Second Vital Capacity (FEV1) Liters test were performed which is consistent with the testing referred to in the Respiratory Listings. Tr. 335. Therefore, Plaintiff's argument that the ALJ's review and consideration of the results from the pulmonary study was somehow flawed is without merit.

Contrary to Plaintiff's argument, the ALJ did clearly articulate the reasons for not providing controlling weight to Dr. Carrillo's opinions and the decision does allow for meaningful review. There is substantial evidence to support the ALJ's decision, and the ALJ did not err in her application of the treating physician rule.

## V. Conclusion and Recommendation

For the foregoing reasons, it is recommended that the Commissioner's decision be AFFIRMED.

Dated: November 15, 2011

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).